# EXHIBIT T

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANNA GROVER, <br> PLAINTIFF <br><br> v. <br><br> SHECHTMAN HALPERIN SAVAGE, LLP, <br> DEFENDANT. | C.A. NO. 16-041- ML-PAS <br> REQUEST FOR EMERGENCY RELIEF |

### PLAINTIFF'S EMERGENCY MOTION TO EXTEND THE DATES SET FORTH IN THE COURT'S MARCH 14, 2016 SCHEDULING ORDER

Now comes Anna Grover, the plaintiff in the above-entitled matter, by and through her attorney, pursuant to Rules 7 and 16 of the Federal Rules of Civil Procedure and Rules cv 7 and cv 16 of the Local Rules for the United States District Court for the District of Rhode Island, and hereby moves this Honorable Court to amend the scheduling order by ninety (90) days[1] or, in the alternative, by a length of time the Court deems appropriate.

As grounds for her motion, Plaintiff relies on her Memorandum of Law attached hereto and incorporated by reference herein.

---

[1] (1) From 8/30/17 to 11/30/17 for Factual Discovery;
(2) From 9/26/17 to 12/26/17 for Plaintiff's Expert Disclosures;
(3) From 10/24/17 to 1/24/18 for Defendant's Expert Disclosures;
(4) From 12/28/17 to 3/28/18 for Expert Discovery;
(5) From 1/12/18 to 4/12/18 for Dispositive Motions; and
(6) From 1/26/2017 to 4/26/18 for Pretrial Memoranda

Plaintiff,

ANNA GROVER

By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (#6819)
LAW OFFICE OF MARK P. GAGLIARDI
120 Wayland Avenue, Suite 7
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)

Dated: August 30, 2017

### CERTIFICATE OF SERVICE

I hereby certify that on the **30**th day of August, 2017, I filed this document through the ECF system with the Clerk of the U.S. District Court for the District of Rhode Island and, therefore, all counsel-of-record has received notice electronically.

/s/Mark P. Gagliardi

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANNA GROVER,<br>    PLAINTIFF<br><br>v.<br><br>SHECHTMAN HALPERIN SAVAGE, LLP,<br>    DEFENDANT. | :<br>:<br>:<br>:<br>:   C.A. No. 16-041- ML-PAS<br>:   REQUEST FOR EMERGENCY<br>:   RELIEF<br>:<br>:<br>:<br>: |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO EXTEND THE DATES SET FORTH IN THE COURT'S MARCH 14, 2016 SCHEDULING ORDER

Plaintiff Anna Grover hereby sets forth this Memorandum of Law in Support of Plaintiff's Emergency Motion to Extend the Dates Set Forth in the Court's March 14, 2016 Scheduling Order.

For the reasons stated herein, the Court should amend the scheduling order by ninety (90) days[1] or, in the alternative, by a length of time the Court deems appropriate.

### FACTUAL BACKGROUND

This disability discrimination and FMLA interference claim arises out of Plaintiff Anna Grover's ("Grover") employment with Defendant Shechtman, Halperin Savage, LLP ("SHS") as a "Foreclosure Billing Specialist" in its Foreclosure Billing Department.

During Grover's employment at SHS, she had a history of mental health issues that affected her ability to perform her job duties that resulted in two (2) separate medical leaves-of-absence in

---

[1] (1) From 8/30/17 to 11/30/17 for Factual Discovery;
   (2) From 9/26/17 to 12/26/17 for Plaintiff's Expert Disclosures;
   (3) From 10/24/17 to 1/24/18 for Defendant's Expert Disclosures;
   (4) From 12/28/17 to 3/28/18 for Expert Discovery;
   (5) From 1/12/18 to 4/12/18 for Dispositive Motions; and
   (6) From 1/26/2017 to 4/26/18 for Pretrial Memoranda

into early 2011. On or about December 30, 2010, Grover was acting oddly and speaking "gibberish" in an office, leading Steve Shechtman ("Shechtman"), SHS's Managing Partner, to believe that Grover was having a stroke. Shechtman testified at his deposition that he believed Grover's medical leave-of-absence was caused by an allergic reaction to medication she was taking. In any event, Grover claims everyone at SHS, including Jeffrey Rutko ("Rutko"), SHS's Director of Finance, who was in a position to influence the decision-makers at SHS, knew that Grover was on a medical leave-of-absence due to mental health issues.

On July 24, 2012, Grover suffered a mentally illness again and left work after feeling "paranoid" and "confused." Shortly thereafter, Grover became hospitalized. SHS and its managers knew Grover was hospitalized due to her own personal illness. Indeed, after Grover had been out of work for more than three (3) days, SHS sent her FMLA paperwork to complete and return to her employer. Eventually, Grover was diagnosed with bipolar disorder. Nonetheless, within days of learning of Grover's illness and her need for FMLA medical leave, SHS decided to terminate Grover's employment due to "billing errors" amounting to approximately $15,500 that it discovered days earlier. SHS claims that it eventually was paid for most of the $15,500 in billing errors, but that Grover's errors put SHS at risk of not being paid. Nonetheless, SHS decided to fire Grover for these alleged errors despite the fact that approximately six weeks earlier, on June 7, 2012, Grover's direct supervisor Gina Grant ("Grant"), SHS's Accounting Manager, gave Grover a performance evaluation rating her overall work performance as "Meets Expectations." Importantly, Grant also wrote in the June 7, 2012 performance evaluation that Grover was "doing a great job with billing."

Grover claims that in 2012, SHS's the Foreclosure Billing Department were in complete chaos due to the fact that there were only two (2) Billing Specialists — herself and Dalila Popko ("Popko") — who were solely responsible for billing all of SHS's approximately 2,000 foreclosures it did on an annual basis. Grover claims that everyone made billing errors, including Popko and that

SHS knew about it, but that her employer used her alleged mistakes as pretext to fire her to cover-up the real reason, which is because she had a mental disability and because she needed FMLA medical leave.

### THE PAPER DISCOVERY IN THIS CASE

Since there is no direct evidence of discrimination in this case, the only way that Grover will be able to prove her claims is by proving pretext, meaning that she will be required to prove that the reason SHS has provided for firing her — billing errors — is not the real reason she was fired. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998). Furthermore, the only way Grover will be able to do this is by proving that others made similar billing errors, but were not fired or disciplined as harshly. Id.

On August 30, 2016, Grover propounded paper discovery on SHS — interrogatories (Ex. "A") and a request for production of documents (Ex. "B"). SHS did not respond timely to these requests, and Grover was forced to seek court intervention compelling responses. On December 8, 2016, Grover filed two motions to compel (Doc. Nos. 14 and 15), which the Court granted on December 28, 2016 via text order due to a lack of objection, ordering SHS to respond within thirty (30) days, no later than January 28, 2017 (Text Order dated 12-28-16). On January 27, 2017, SHS finally responded to Grover's paper discovery requests four (4) months after they were due and only after Grover move the Court to compel their production.

Not surprisingly, SHS has only produced a portion of the evidence in its possession relating to the firm's billing errors during the relevant time period. For example, in the Position Statement SHS submitted to the Rhode Island Commission for Human Rights in response to Grover's Charge of Discrimination, SHS provided as evidence of Grover's billing errors copies of the thirteen (13) invoices Grover failed to bill timely. SHS provided the same evidence in its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A).

During discovery, Grover requested information about billing errors committed at SHS. Interrogatory No. 17 of Plaintiff's First Set of Interrogatories Directed to Defendant provides:

From January 1, 2010 to the present, identify <u>all billing errors</u> committed in your Billing Department and please set forth in detail:

a. The name of the employee responsible for committing the billing error;
b. The employee's job title;
c. The employee's current job status;
d. The date of the billing error;
e. The dollar amount of the billing error;
f. Whether the employee was disciplined; and
g. If the employee was disciplined, the type of discipline issued

(Ex. "A") (emphasis added).

Document Request No. 49 of Plaintiff First Set of Document Requests to Defendant provides: "All documents relating to your response to Interrogatory No. 17 of Plaintiff's First Set of Interrogatories Directed to Defendant." (Ex. "B").

SHS responded that it "could not recall any employees committing errors similar to the ones for which Grover was fired." Indeed, Grover cannot force SHS to produce documents that do not exist. However, during two (2) recent depositions — Grant's on August 9, 2017 and Shechtman's on August 14, 2017 — it was revealed for the first time in this case that SHS has in its possession documentation of its billing errors that are responsive to Grover's specific requests that SHS has not produced and in spite of its obligations under Rule 26(a)(1)(A). Indeed, Grover only has one more deposition to take in this matter — of former employee Popko. However, without this vital information that SHS should have produced during discovery, Grover will not be able to effectively examine Popko on SHS's billing practices, specifically how SHS handles billing errors and under what circumstances it disciplines its employees for billing errors. As such, because SHS has failed and refused to abide by its discovery obligations, Grover has suffered great prejudice and needs the additional time requested via this motion in order to flesh out this vital information about billing errors at SHS.

### Gina Grant's Deposition — Emails memorializing billing errors

On August 9, 2017, Grover took Grant's deposition. Grant testified that in or about June 2012, Shechtman instituted a new policy for dealing with billing errors in the Foreclosure Billing Department in which he directed Grant to keep track of all the billing errors that Billing Specialists made. Grant testified that her practice for tracking billing errors was to copy e-mails memorializing billings errors in a folder on her desktop computer — a separate folder for each employee. Understandably, Grant could not remember which employees made billings errors or the amounts of the errors. Nonetheless, Grant testified that she still has the e-mails saved on her desktop and would be able to retrieve them if requested to do so. This was the first time Grover ever heard about SHS's practice for tracking these types of billing errors. Indeed, if other SHS employees made billing errors similar to those for which Grover was fired and these employees were not fired or disciplined at all, this evidence would support Grover's argument that her firing was pre-textual.

Here, Defendant provided no information whatsoever regarding the billing errors that have been memorialized in the folders contained on Grant's computer. Had SHS provided this information that is clearly responsive to Grover's requests, Grover would have been able to examine Grant and Shechtman at their depositions regarding these errors — the specific types of errors that were made (i.e., missed deadlines v. incorrect amounts); who made them; the dollar amounts of the errors; and whether or not SHS was ultimately paid for these invoices. Indeed, Grover should be allowed to review these e-mails and the specific billing errors to determine whether this evidence strengthens or weakens her case.

### Shechtman's Deposition — The "Score Cards" and the "Accounts Receivable Reports"

On August 14, 2017, Grover took Shechtman's deposition. Shechtman testified that many of the firm's foreclosure clients provide SHS with "score cards" that rate SHS's performance on its

billing practices — specifically the accuracy and timing of how it bills clients. The foreclosure clients then compare SHS's score cards with other law firms it deals with, presumably to incentivize SHS to do a better job and make fewer mistakes. Shechtman testified that if SHS received low enough scores from its foreclosure clients, it could lose some or even all of that client's business. Grover believes these score cards should have been produced with SHS's Initial Disclosures or pursuant to Document Request No. 49. In any event, Grover will need to review these score cards to determine whether this evidence strengthens or weakens her case. To the extent SHS claims the score cards are not responsive to any of Grover's discovery requests to date, in an abundance of caution, Grover has sent SHS a document request for this information and will need the extension of time to allow SHS to retrieve this information and produce it for Grover's review. Indeed, this information was first revealed to Grover only a few weeks ago and, therefore, the timing of Grover's request near the fact discovery deadline is not due to lack of diligence or undue delay on her part.

Shechtman also testified that he regularly reviews SHS's "Accounts Receivables Report" and can determine by looking at a report whether or not SHS has "written-off" any receivables due to billing errors. Once again, Grover believes this information should have been produced with SHS's Initial Disclosures or pursuant to Document Request No. 49. In any event, Grover will need to review this information to determine whether this evidence strengthens or weakens her case. To the extent SHS claims the Accounts Receivables Reports are not responsive to any of Grover's discovery requests to date, in an abundance of caution, Grover has sent SHS a document request for this information and will need the extension of time to allow SHS to retrieve this information and produce it for Grover's review.

### THE FACT WITNESS DEPOSITIONS IN THIS CASE

On May 1, 2017, Grover's counsel e-mailed SHS's counsel seeking to take six (6) depositions of witnesses still employed at SHS, including a Rule 30(b)(6) deposition, prior to the previous fact

discovery deadline of May 30, 2017 (Ex. "C"). Grover's counsel had a trial date certain of June 19, 2017 in the matter styled as Mancini v. City of Providence et al.; C.A. No. 13-00092-S-PAS before the Honorable William E. Smith of this Court, and Grover's counsel wanted to complete all of the depositions in this matter prior to the Mancini trial. However, on May 10, 2017, Judge Smith vacated sua sponte the trial date in Mancini and ordered the parties to file no later than May 26, 2017 motions for summary judgment that he had previously denied without prejudice pending the Rhode Island Supreme Court's ruling on his certified question of whether the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 et seq. allows for individual supervisor liability. As such, because of Judge Smith's order in Mancini, Grover's counsel had to reschedule all of the depositions in this matter so they could focus on the Mancini case.

Over the next several months the parties attempted to reschedule these depositions, however, due to scheduling conflicts between SHS's counsel and the deponents, the depositions were not completed until only a few weeks before the August 30, 2017 fact discovery deadline (Ex. "C"). And because of the evidence that was revealed during Grant's and Shechtman's depositions only several weeks ago, Grover needs the additional time to obtain this information and to take Popko's deposition.

### Deposition of Popko

Grover would like to depose former SHS employee and Foreclosure Billing Specialist Popko. Grover's counsel has spoken with Popko, who claims that during her employment with SHS, she made serious billing errors similar to Grover's yet she was not terminated or disciplined in any way. Popko claims whenever she made a billing error she would inform Grant by e-mail of her errors. Presumably, these e-mails are contained in the folders on Grant's desktop computer. Grover was planning to take Popko's deposition prior to the fact discovery deadline, but only after deposing Grant and Shechtman, so Grover could learn more about SHS's billing practices from

Grant and Shechtman. However, after the information surfaced during Grant and Shechtman's deposition regarding the additional discovery that is needed regarding SHS's billing errors, Grover believes that it would be futile to examine Popko on SHS's billing practices without this information in hand.

## THE LAW

Rule 16(b)(4) of the Federal Rules of Civil Procedure ("Rule 16(b)") provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This stringent "good cause" standard requires "showing that the deadline cannot be reasonably met despite the diligence of the party seeking the extension." O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154 (1st Cir. 2004) (internal citations omitted). Other factors, such as prejudice to the opposing party, may be considered by the Court, but the "dominant criteria" is the diligence of the party seeking the extension. Comité Fiestas de la Calle San Sebastian, Inc. v. Cruz, 314 F.R.D. 23, 25 (D.P.R. 2016) (Besosa, J.) (citing O'Connell).

## ARGUMENT

For the reasons stated herein, the Court should grant Grover's request for a ninety (90) day extension of the deadline in the original scheduling order:

1. Grover will be unable to complete fact discovery by the August 30, 2017 deadline despite her diligence in conducting discovery and prosecuting her claims because SHS only recently disclosed to Grover that it is in possession of vital information concerning billing errors that Grover needs to prove pretext in this case and to properly examine Popko at her deposition.

2. Grover has been diligent in conducting discovery and prosecuting her claims and to the extent that there has been any undue delay in this matter — which Grover disputes — said delay was the result of unanticipated scheduling matters that arose for Grover's counsel in the Mancini

2. Grover has been diligent in conducting discovery and prosecuting her claims and to the extent that there has been any undue delay in this matter — which Grover disputes — said delay was the result of unanticipated scheduling matters that arose for Grover's counsel in the Mancini matter; Grover accommodating the scheduling needs of SHS's counsel and SHS's witnesses who were unavailable for depositions when Grover sought to depose them months before the August 30, 2017 fact discovery deadline; and SHS's four (4) month delay in responding to Grover's paper discovery requests.

3. Cases should be tried on the merits and scheduling orders and deadlines should not be exploited as gamesmanship between lawyers.

4. SHS will suffer no prejudice if the Court grants Grover's motion because the extension sought is only ninety (90) days and a trial date has not yet been set in this matter.

5. The additional time requested is necessary to complete fact discovery.

6. This motion is not interposed to delay the consideration of this matter, but rather because of the exigencies outlined above.

7. Grover does not anticipate that she will seek any further requests for an extension of time to complete discovery provided that SHS responds timely to her recent document requests.

### REQUEST FOR ORAL ARGUMENT

Grover respectfully requests an oral argument on her motion.

### CONCLUSION

For the reasons previously stated, the Court should amend the scheduling order by ninety (90) days or, in the alternative, by a length of time the Court deems appropriate.

Plaintiff,

ANNA GROVER

By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (#6819)
LAW OFFICE OF MARK P. GAGLIARDI
120 Wayland Avenue, Suite 7
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)

Dated: August 30, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on the **30**th day of August, 2017, I filed this document through the ECF system with the Clerk of the U.S. District Court for the District of Rhode Island and, therefore, all counsel-of-record has received notice electronically.

/s/Mark P. Gagliardi